**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES MYLES,**
       Petitioner,      5:06-CV-0007
 vs.                (NAM)
                Related Criminal Action
**UNITED STATES OF AMERICA,**     5:03-CR-0243

       **Respondent.**
_____

APPEARANCES          OF COUNSEL:

Charles Myles
15327-014
Federal Correctional Institution – Otisville
P.O. Box 1000
Otisville, NY 10963
Petitioner, *Pro Se*

Office of the United States Attorney   John M. Katko, Esq.
P.O. Box 7198           Assistant U.S. Attorney
100 S. Clinton Street
Syracuse, NY 13261-7198
Attorney for Respondent

**NORMAN A. MORDUE, Chief U.S. District Judge**

### MEMORANDUM-DECISION AND ORDER

**I. Background[1]**

On August 7, 2003, a Superseding Indictment was returned by a grand jury sitting in the

Northern District of New York.  *See* 03-CR-0243, Dkt. No. 69 ("Superceding Indictment").  That

accusatory instrument alleged that petitioner *pro se* Charles Myles and others combined, conspired,

confederated, and agreed to engage in a pattern of racketeering activity through their membership in

---

[1] The background information contained in this Memorandum-Decision and Order is derived from the documents filed in the present civil action, *Myles v. United States*, 5:06-CV-0007 ("06-CV-0007"), as well as the file of the related criminal matter, *United States v. Edwards et al.*, 5:03-CR-0243 (N.D.N.Y.) ("03-CR-0243").

a criminal enterprise known as the Boot Camp Gang. *Id.*

On February 27, 2004, following negotiations between Myles's counsel and Assistant United States Attorney John Katko ("AUSA Katko"), the parties entered into a plea agreement relating to the Superceding Indictment. 03-CR-0243, Dkt. No. 258 ("Plea Agreement"). That agreement contained, *inter alia*, the factual basis for Myles's guilty plea (*see* Plea Agreement at ¶ 4) and provided that, under the terms of the Plea Agreement, he was expressly waiving his right to appeal or collaterally attack his conviction and any sentence of imprisonment of 235 months or less. *Id.* at ¶ 11 ("Appellate Waiver").

At the proceeding over which this Court presided wherein Myles formally entered his change of plea, the Court informed him of the rights he would be waiving by entering a guilty plea and the consequences of that plea. *See* Transcript of Change of Plea of Charles Myles (03-CR-0243, Dkt. No. 609) at pp. 2-4. After Myles acknowledged that he was aware of those facts, *id.* at p. 4, the Court took his guilty plea and then elicited answers from him which established, *inter alia*, that he had not been threatened into changing his plea, he was not under any duress, and he was entering the plea voluntarily and of his own free will. *Id.* at pp. 6-11. AUSA Katko then discussed what the Government would have proven if the case had gone to trial, *id.* at pp. 11-13, and Myles thereafter conceded that he had engaged in the acts summarized by the prosecutor which led to the criminal charges that were brought against Myles. *Id.* at p. 13. The prosecutor then noted that Myles had executed the Appellate Waiver, *id*. at p. 14, and Myles specifically acknowledged that he was aware of the terms of that waiver and that he had executed same. *Id.* at p. 16. The Court then accepted his guilty plea. *Id.* at pp. 18-19.

At the sentencing hearing that arose out of Myles's guilty plea, this Court found his Total

Offense Level to be 33, his criminal history category to be IV, and the applicable range of imprisonment under the United States Sentencing Guidelines to be between 188 and 235 months. *See* Transcript of Sentencing of Charles Myles (11/18/04) (03-CR-0243, Dkt. No. 608) at p. 10. However, the Court concluded that his criminal history category overstated the likelihood that he would commit crimes in the future, and thereafter imposed a sentence of 180 months imprisonment on Myles. *Id.* This Court then reiterated the terms of the Appellate Waiver, *id.* at p. 12, which Myles again acknowledged. *Id.*

Myles did not file any appeal of his conviction or sentence. *See* Motion to Vacate, Set Aside or Correct Sentence (06-CV-0007, Dkt. No. 1) ("Motion to Vacate") at ¶ 8.

In the memorandum of law he has filed in support of his Motion to Vacate (*see* Attachment to Motion to Vacate) ("Supporting Mem."), Myles claims that his conviction and sentence must be set aside because they were obtained in violation of the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). *See* Supporting Mem. at pp. 1-2. Myles candidly acknowledges, however, that current case law does not permit the retroactive application of the law discussed in the above cases to collateral challenges to convictions such as the action he has commenced herein. *See id.* at p. 3. He has therefore requested that this action be dismissed "without prejudice subject to re-filing at such time as the Supreme Court renders a decision in favor of retroactivity." *Id.* at pp. 3-4.

The Office of the United States Attorney for the Northern District of New York, acting on respondent's behalf, has filed a letter-brief in opposition to Myles's application. *See* 06-CV-0007, Dkt. No. 4 ("Letter Br."). In that filing, respondent argues that petitioner's Motion to Vacate was not timely commenced and that, in any event, the claims asserted by him in his pleading must be denied. *Id.*

3

Petitioner thereafter filed a Traverse (06-CV-0007, Dkt. No. 6) ("Traverse"), and a supplemental memorandum of law in further support of his Motion to Vacate (06-CV-0007, Dkt. No. 8) ("Supplemental Mem."). In his supplemental memorandum, Myles appears to be requesting permission from this Court to amend his Motion to Vacate and assert additional claims alleging: i) ineffective assistance of trial counsel (*see* Supplemental Mem. at pp. 2-16); and ii) error on the part of this Court in sentencing Myles due to inaccurate information contained in the Pre-Sentence Investigation Report prepared by the Probation Department for the Northern District of New York (*id*. at pp. 16-17).

**II.   Discussion**

    **A.   Statute of Limitations**

As a result of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2255 now provides that motions to vacate brought under this section are subject to a one year statute of limitations. *See* § 2255, ¶ 6.

In the underlying criminal action, the judgment of conviction was entered against Myles on November 30, 2004. *See* 03-CR-0243, Dkt. No. 500. Since he did not file any appeal relating to his conviction or sentence, *see* Motion to Vacate, ¶ 8, his conviction became "final" the first business day after the ten day period during which he could have timely filed his appeal in that criminal action expired, i.e., Wednesday, December 15, 2004. *See* Fed.R.App. P. 4(b), 26(a); *see also Aboulissan v. United States*, No. 03-CV-6214, 2008 WL 413781, at *2 (E.D.N.Y. Feb. 13, 2008) (citing *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000)) (other citations omitted). Myles therefore had one year from that date, until December 16, 2005, within which to timely commence this action. Since this action was not filed until, at the earliest, December 29, 2005 – the date on

4

which Myles signed his Motion to Vacate (*see* Motion to Vacate at p. 6)[2] – respondent correctly argues that this action must be dismissed as untimely unless the governing statute of limitations may be properly tolled by this Court. *See* Letter Br. at p. 3.

The tolling of the AEDPA's statute of limitations is reserved for "rare and exceptional" circumstances. *Villanueva v. United States*, 346 F.3d 55, 62 (2d Cir. 2003); *United States v. Clark* No. 06 Civ. 9884, 2008 WL 2428223, at *2 (S.D.N.Y. June 12, 2008) (citations omitted); *United States v. Flores,* No. 07 Civ. 466, 2007 WL 4326733, at *1 (S.D.N.Y. Dec. 4, 2007) (citation omitted). The party seeking such tolling " 'bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.' " *Clark*, 2008 WL 2428223, at *2 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (other citations omitted). As the *Clark* court cautioned, "[t]hese requirements are to be strictly construed." *Clark*, 2008 WL 2428223, at *2 (internal quotation marks and citation omitted).

Myles offers several arguments in support of his request for equitable tolling. He initially asserts that he has "no experience with the law" and was therefore forced to rely on other inmates for legal assistance, all of whom proved to be unreliable for a variety of reasons, none of which were under the control of Myles. *See* Traverse at pp. 2-4. Unfortunately for petitioner, "it is well-established that such circumstances are not [so] 'extraordinary' " as to warrant invocation of the doctrine of equitable tolling. *See Whaley v. Graham*, No. 06 CV 3021, 2007 WL 708796, at *3 (E.D.N.Y. Mar. 6, 2007) (petitioner's alleged mental retardation, lack of education and general ignorance of the law insufficient to warrant equitable tolling of AEDPA's statute of limitations)

---

[2] Since Myles is incarcerated, the Court deems his petition to have been filed on the date he signed his Motion to Vacate. *See Brown v. United States*, No. 02 CIV. 647, 2002 WL 31495996, at *2 (S.D.N.Y. Nov. 7, 2002) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)) (other citations omitted).

(citations omitted), *appeal dismissed*, *Whaley v. Graham*, No. 07-1436-pr, slip op. at 1 (2d Cir. Dec. 21, 2007); *Martinez v. Ryan*, 133 Fed.Appx. 382 (9th Cir. 2005) (inmate not entitled to equitable tolling of AEDPA's statute of limitations notwithstanding "his limited education, his reliance on other prisoners to file his petition, and his lack of access to legal materials and assistance given his custody status") (unreported)[3]; *Moreno-Castillo v. United States*, No. 02 CV 2858, 2003 WL 23109747, at *2 (S.D.N.Y. Dec. 31, 2003) (petitioner's difficulty in obtaining assistance from other prisoners or prison staff "not sufficiently extraordinary to merit equitably tolling the AEDPA's one-year statute of limitations, since these are disabilities common to many prisoners") (internal quotation and citation omitted); *United States v. Soberanis-Sagrero*, No. CIV 07-2060, 2007 WL 2509724, at *2 (D.Minn. Aug 30, 2007) (AEDPA not tolled notwithstanding facts that attorney never informed petitioner of his right to file a § 2255 motion, the law library lacked sufficient legal materials and no Spanish-speaking law library clerks could assist petitioner); *Armand v. Strack*, 98 Civ 6650, 1999 WL 167720 at *4 (E.D.N.Y. Feb. 19, 1999) ("petitioner's alleged inability to receive 'full assistance' from the [prison] library staff" did not represent " 'extraordinary' or 'rare and exceptional' circumstances, making it 'impossible to file his petition' ").

      Petitioner also urges this Court to find that he engaged in "extreme 'good-faith' efforts" to timely file this action. Traverse at p. 4. Specifically, he states that although it is contrary to the policy of the Otisville Federal Correctional Institution for him to have asked other inmates to assist Myles in preparing his legal papers, *see* Traverse at p. 3, he nevertheless provided his legal materials to two different inmates, one of whom was released and thereafter left Myles's papers in "disarray,"

---

[3] Under Rule 36-3 of the Ninth Circuit Court of Appeals, unpublished decisions of that court issued prior to January 1, 2007 are generally not to be cited to courts within the Ninth Circuit.

and the other of whom was transferred to another federal correctional institution and apparently failed to return to Myles his legal documents. *Id.* at pp. 2-4. Thus, petitioner appears to invite this Court to condone his misconduct – by equitably tolling the statute of limitations – because he allowed other inmates to possess his legal work, contrary to prison regulations. *Id.* This Court declines that invitation, and specifically rejects the proposition that an inmate's intentional failure to comply with prison regulations may justify an equitable tolling of the AEDPA's statute of limitations.

Petitioner also argues that the facts of the case in *Brandon v. United States*, 89 F.Supp.2d 731 (E.D.Va. 2000)[4] are "very similar" to the case currently before this Court, and that therefore, as in *Brandon*, this Court should invoke the doctrine of equitable tolling. *See* Traverse at pp. 7-8. In *Brandon*, the petitioner filed a motion under 28 U.S.C. § 2255 after the statute of limitations had expired, however the district court equitably tolled the statute of limitations, thereby making the action timely under the AEDPA. *Brandon*, 89 F.Supp.2d at 734. In that case, however, the respondent conceded that the petitioner "did not receive either actual or constructive notice of the denial of *certiorari* [regarding his direct appeal] until after the limitations period expired." *Brandon*, 89 F.Supp.2d at 734. Since "petitioner, through no fault of his own, first learned of the outcome of his final appeal after the time for seeking habeas review had expired," the *Brandon* court found that the statute of limitations should be equitably tolled. *Id.*

The facts in *Brandon* are readily distinguishable from the facts present in the case *sub judice*. Far from diligently pursuing this claim, it appears as though Myles took no significant action to ensure that his action was timely filed (except solicit legal help from other inmates in contravention

---

[4] Petitioner incorrectly claims that the *Brandon* decision was issued by the Fourth Circuit Court of Appeals. *See* Traverse at pp. 6-7.

of prison regulations) during the year long limitations period. The Court is simply not persuaded that *Brandon* supports petitioner's claim for equitable tolling herein.

Petitioner also seems to argue that his trial counsel's failure to advise Myles of his alleged right to file an appeal and/or motion under § 2255 warrants equitable tolling of the limitations period. *See* Traverse at p. 10. However, in light of the valid Appellate Waiver discussed more fully above, he cannot now properly argue that he is entitled to equitable tolling due to counsel's failure to inform Myles of his alleged right to pursue an appeal or collateral challenge. *E.g.*, *Alcantara v. United States*, No. 01 CIV.1987, 2001 WL 1006624, at *3 (S.D.N.Y. Aug. 31, 2001) (citation omitted).

In sum, Myles has failed to establish the existence of "rare and exceptional" circumstances sufficient to justify equitable tolling with respect to the civil action he has commenced. *Villanueva*, 346 F.3d at 62; *Clark*, 2008 WL 2428223, at *2. This Court therefore dismisses this action as time-barred.

**B.     Proposed Amendments to Motion to Vacate**

As noted above, in his supplemental memorandum, Myles appears to be requesting permission from this Court to amend his Motion to Vacate so as to assert additional claims herein. *See* Supplemental Mem. However, federal courts must deny proposed amendments to pleadings when it would be futile to grant the requested amendment. *Manley v. Mazzuca*, No. 01 Civ. 5178, 2007 WL 4233013, at *3 (S.D.N.Y. Nov. 30, 2007) (citing Fed.R.Civ.P. 15(a)).[5] Since Myles's action was not timely commenced, the claims which he now seeks to add to his untimely petition

---

[5] Rule 12 of the Rules Governing Section 2255 Cases provides that the Federal Rules of Civil Procedure apply to actions brought under § 2255 "to the extent that they are not inconsistent with any statutory provisions or these rules." *Id.*

must be denied on the grounds of futility. *E.g.*, *United States v. Duffus*, 174 F.3d 333, 336-38 (3d Cir. 1999) (affirming district court's denial of motion to amend § 2255 petition; "if the district court had granted the motion to amend ... it would have frustrated the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final").

### III.     Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> (B) the final order in a proceeding under section 2255.[6]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

**WHEREFORE**, after having reviewed the record relating to the underlying criminal matter, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED** that Myles's Motion to Vacate (06-CV-0007, Dkt. No. 1 and 03-CR-0243-002, Dkt. No. 644) is **DENIED**, and it is further

**ORDERED** that Myles's application to amend his Motion to Vacate (06-CV-0007, Dkt. No. 8) is **DENIED**, and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the parties by

---

[6] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

9

electronic or regular mail.

A Certificate of Appealability shall not be issued in this case.

IT IS SO ORDERED.

Date:  December 2, 2008

Norman A. Mordue
Chief United States District Court Judge